UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD BROWN *et al.*,<br><br>Plaintiffs<br><br>v.<br><br>SUFFOLK COUNTY,<br>Defendant | C.A. NO. 05-10188-MEL |

and

| | |
|---|---|
| GIUSEPPE MAROTTA *et al.*,<br><br>Plaintiff<br><br>v.<br><br>SUFFOLK COUNTY,<br>Defendant | C.A. NO. 05-10032-MEL |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY UNDER COUNT I OF THEIR COMPLAINTS**

## I. SUMMARY JUDGMENT STANDARD.

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *O'Brien v. Town of Agawam*, 440 F.Supp.2d 3, 8- 9 (D. Mass.

2006), *quoting* Fed. R. Civ. P. 56(c). "An issue is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party,' and a fact is 'material' if 'it is one that might affect the outcome of the suit under the governing law.'" *O'Brien, supra, quoting Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 150 (1st Cir. 2006) (quotation omitted). "The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. The burden then "shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *O'Brien, supra, quoting Sands v. Ridefilm Corp.*, 212 F.3d 657, 661 (1st Cir. 2000) (*quoting DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). "The opposing party 'cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.'" *O'Brien, supra, quoting McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995). "The court must then 'view the facts in the light most favorable to the non-moving party' and draw 'all reasonable inferences in that party's favor.'" *O'Brien, supra, quoting Pac. Ins. Co. v. Eaton Vance Mgmt.*, 369 F.3d 584, 588 (1st Cir. 2004) (quotation omitted).

## II. THE DEFENDANT VIOLATED THE FLSA BY FAILING TO INCLUDE PREMIUMS WHEN CALCULATING OVERTIME PAYMENTS DUE THE PLAINTIFFS.

### A. All Pay Premiums Required By The CBA Must Be Included In The Plaintiffs' Regular Rate.

Under the FLSA, an employee who works more than 40 hours in a "workweek" is entitled to be paid "at a rate not less than one and one-half times the *regular rate* at which

he is employed". 29 U.S.C. § 207(a)(1)[1] (emphasis added). "Calculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement." *O'Brien v. Town of Agawam,* 350 F.3d 279, 294 (First Cir. 2003). Under the FLSA, the "regular rate shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee", with the exception of an "exhaustive" list of exceptions set forth therein. 29 U.S.C. § 207(e); *O'Brien, supra.*[2] As clarified by the Department of Labor's Regulations, this means that "all remuneration for employment paid to employees which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined.". 29 C.F.R. § 778.200(c). Moreover, any "promised bonuses" must be included in the regular rate of pay. 29 C.F.R. § 778.211(c).

As none of the exclusions apply here, therefore, under the FLSA, all of the premiums the Plaintiffs are entitled to receive under the CBA have to be included in Plaintiffs' "regular rate" of pay. This includes the shift differentials,[3] and the "bonus"

---

[1] Here is the full text of 29 U.S.C. § 207(a)(1):

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

[2] This is the direct quote from part of the *O'Brien* decision cited:

> The statute includes a list of exceptions to this rule, *see* § 207(e)(1)-(e)(8), but the list of exceptions is exhaustive, *see* § 778.207(a), the exceptions are to be interpreted narrowly against the employer, *see Mitchell v. Kentucky Fin. Co.,* 359 U.S. 290, 295-96, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959), and the employer bears the burden of showing that an exception applies, *see Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 209, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966).

[3] "Educational Incentives," (Article XIX, Section 3); "Weekend Differential," including $1.00 per hour for all regularly scheduled hours worked between the hours of 11:00 p.m. on Friday and 11:00 p.m. on Sunday (Article XIX, Section 9); "Shift Differential," including $1.05 per hour for all regularly scheduled actual hours worked on a night shift (Article XIX, Section 10); "Public Safety," including $1.30 per hour for

payments the Plaintiffs can earn based on the longevity of their service, and their "wellness" or fitness incentive.[4]

1. The hourly differentials must be included the Plaintiffs' regular rate.

With respect to the hourly differentials, "case law is unequivocal that shift-differential pay must be included in an employee's FLSA 'regular rate.'" *O'Brien, supra.*

> The Supreme Court has specifically interpreted § 207(e) of the FLSA to include such payments:
>
> > Where an employee receives a higher wage or rate because of undesirable hours or disagreeable work, such wage represents a shift differential or higher wages because of the character of the work done or the time at which he is required to labor rather than an overtime premium. Such payments enter into the determination of the regular rate of pay. *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 468-69 (1948).
>
> The Secretary of Labor has also clearly adopted this view. *See* 29 C.F.R. § 778.207(b) [5] ('The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials....')." *O'Brien v. Town of Agawam,* 350 F.3d 279, 295 (1st Cir. 2003).

The interpretative regulation cited by the *O'Brien* court in the last quoted section, 29 C.F.R. § 778.207(b), further clarifies the principle that all of the hourly differentials in the CBA must be included in the Plaintiffs' regular rate:

---

employees graded as CO-1, CO-2, and CO-3, and $1.54 per hour for employees graded as CO-4 (Article XIX, Section 11):.

[4] "Longevity Pay," in lump sums based on years of service (Article XIX, Section 8);
A "Fitness Bonus" of $800, payable on or before December 15 each year, for employees who meet the Defendant's "Wellness and Fitness" program requirements (Article XIX, section 14); A yearly "uniform allowance" of $750 (Article XVIII, section 2).

[5] Here is the pertinent part of 29 C.F.R. § 778.207(b):

> *Nonovertime premiums*. The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work. It also requires inclusion of any extra compensation which is paid as an incentive for the rapid performance of work, and since any extra compensation in order to qualify as an overtime premium must be provided by a premium rate per hour, except in the special case of pieceworkers as discussed in Sec. 778.418, lump sum premiums which are paid without regard to the number of hours worked are not overtime premiums and must be included in the regular rate.

As these principles apply here, each of the hourly differentials is an extra premium that the Plaintiffs are entitled to receive under the CBA. The hourly differentials, therefore, must be included in Plaintiffs' regular rate of pay. 29 U.S.C. § 207(e).

2. The non-discretionary payments due on the basis of longevity and fitness for duty must also be included in the regular rate.

Likewise, the non-discretionary payments for longevity and fitness also have to be included in the regular rate.[6] As the First Circuit reasoned in *O'Brien*, a longevity payment due unionized police officers had be factored into their regular rate of pay, because: "Bonuses that are explicitly promised to employees—as the longevity payments are in the CBA—must be included in the employees' regular rate." *O'Brien, supra* at 295, *citing* 29 U.S.C. § 207(e)(3); and 29 C.F.R. § 778.211 (any bonus paid pursuant to a contract must be included in the regular rate)." As the fitness bonus was likewise "promised" to the Plaintiffs under the CBA, the FLSA requires that it be included in the Plaintiffs' regular rate of pay. 29 C.F.R. § 778.211(c).[7]

---

[6] CBA Article XIX, Section 8, Article XIX, section 14, and Article XVIII, section 2, respectively.

[7] Ex. 6, Cawley Memorandum, stating:

**B. The Defendant Has Violated The FLSA By Failing To Include The Premiums In The Plaintiffs' Regular Rate.**

Here, as the Defendant's Personnel Director, Mr. Cawley, stated in his October 5, 2000, memorandum, prior to the Peoplesoft conversion, the rate of pay upon which the Defendant made overtime payments "included payments received for regular hours worked and the differentials."[8] After the conversion, the differentials were not included.[9] As Mr. Cawley wrote, this plainly violated the FLSA, which required the differentials and "wellness" incentive to be included in calculating the Plaintiffs' overtime wages. 29 U.S.C. § 207(e).[10] This is a violation of the law.

The Plaintiffs, therefore, are entitled to summary judgment on Count I of their complaints. The Defendant must be ordered to include the aforementioned premiums in determining the Plaintiffs' regular rate of pay, and to make them whole for failing to include them in paying them FLSA overtime.

**III. A BACK PAY AWARD OF A MINIMUM OF THREE YEARS UNDER THE FLSA IS REQUIRED BECAUSE THE DEFENDANT'S VIOLATION WAS "WILLFUL", AND THE PLAINTIFFS ARE ENTITLED TO AN AWARD OF LIQUIDATED DAMAGES.**

**A. The Defendant Knew That It Was Required To Include The Premiums In Calculating The Plaintiffs' Overtime Wages, But Failed To Include Them, And Therefore, Its Violation Of The Law Must Be Deemed Willful Within The Meaning Of 29 U.S.C. § 255(a).**

---

> Option 2: Follow the strict guidelines of the FLSA in calculating OT rates. Under this scenario, the OT rate would include the regular wages, and all differentials. The wellness money would also have to be included in this rate.

Mr. Cawley's reference to the wellness premium relates to the "fitness" incentive in Article XIX, section 14.

[8] *See* Cawley Memorandum, Ex. 6. These differentials included the educational incentives, weekend differential, shift differential, public safety differential, and the wellness bonus due employees.

[9] *Id.*

[10] *See* fn. 8, *supra*.

Under the FLSA, an aggrieved employee is entitled to an award of back pay dating back at least three years[11] if the employer's violation of the law was "willful". 29 U.S.C. § 255(a). A violation is deemed willful if an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]". *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, (1988); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 680 (1st Cir. 1998); *citing* 29 C.F.R. § 578.3(c), (the federal regulation that defines the term "willful violation" based on the *Richland Shoe* holding.)

As this standard applies, the Defendant's violation must be deemed willful. Cawley admitted in his October 5 memorandum, and in his deposition, that he knew that the FLSA required that the premiums be included in calculating overtime due to the Plaintiffs, and that if they were, "[s]ome employees would see an increase in their OT rate . . ..."[12] Cawley's admission is clearly made when he offers as an option that the Defendant might "[f]ollow the strict guidelines of the FLSA in calculating OT rates. Under this scenario, the OT rate would include the regular wages, and all differentials. The wellness money would also have to be included in this rate."[13] A benefit of this

---

[11] The Plaintiffs reserve their right to argue at trial that the statute of limitations should be extended beyond three years based on representations made by the Defendant, including assurances that they would be made whole for the non-inclusion of the premiums after the conversion, and the misrepresentation that they would cede their rights for contractual overtime under the CBA if they asserted their FLSA rights.

[12] Ex. 6, Cawley Memorandum; Ex. 3 Cawley, Tr./14, line 20-23; Tr./16-17, lines 20-23; 1; Tr./17, lines 18-21; Tr./21, lines 15-23; Tr./22 lines 12-20.

[13] Ex. 6, Cawley Memorandum.

course of action, Cawley opined, was that "[t]he Department would finally be in full compliance with the FLSA."[14]

Significantly, Cawley, who was the Defendant's Director of Personnel, distributed his memorandum to the Defendant's Chief Financial Officer, Yotts; its Deputy Financial Officer, Gainsford; and Abate of Employee Relations.[15] All of these officials, therefore, must be charged with knowledge that the Defendant was violating the FLSA.

Moreover, Cawley's Assistant Director of Personnel, McDonough, wrote the memorandum with him.[16] For her part, McDonough had concluded as early as April 10, 2000, that the non-inclusion of premiums violated the FLSA, demonstrated by the question she posed in her email to the City's representative on the conversion project that day: "Do you have any idea when the Overtime will reflect FLSA? When will Weekend Differential (sic) be automatic?"[17] McDonough's question shows that she was aware that the Department was violating the FLSA in its overtime payments.

Based on Cawley's memorandum, therefore, it cannot be disputed that all the key players in the Defendant's management knew that the non-inclusion of the premiums violated the FLSA. The Defendant's violation of the law was willful, and the limitations period for calculating the Plaintiffs' back pay must be, at a minimum, three years.[18]

B. The Plaintiffs Are Entitled To An Award Of Liquidated Damages Under Section 216(b) Of The FLSA Because The Defendant Cannot Show That It Had A Good Faith Basis For Failing To Include Premiums In Calculating The Plaintiffs' Overtime.

[14] Ex. 6, Cawley Memorandum.

[15] Ex. 6, Cawley Memorandum.

[16] Ex. 8, McDonough Tr./16

[17] Ex. 10.

[18] *See* footnote 11, *supra*.

Likewise, the Plaintiffs must be awarded liquidated damages in this case. "Any employer who violates the provisions of … section 207 of this title shall be liable to the … employees affected in the amount of their … unpaid overtime compensation … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employer can be relieved of this burden only "if it can show to the court's satisfaction that the act or omission giving rise to the action for unpaid overtime compensation 'was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA].'" *Parolin v. City of Boston*, 327 F.Supp.2d 101, 109-110 (D. Mass. 2004), *quoting* 29 U.S.C. § 260.

Here, the Defendant can make no such showing. *Parolin, supra.* As amply demonstrated in the previous section, the Defendant's failure to comply with the FLSA was not based on any good faith belief that it was complying with the FLSA, but conversely, was conscious and calculated. Adding to this, in his memorandum, Cawley and his coauthor, McDonough, provided the Defendant's key officials with the conclusion that the Defendant was violating the FLSA by failing to include the premiums in the Plaintiffs' overtime, but opined that it might be in the Defendant's interest to continue to violate the law because complying with the FLSA would be an "administrative and logistical nightmare for the BAISE project."[19] McDonough echoed this sentiment, contending that the Sheriff opted not to include the premiums in the Plaintiffs' pay, despite being urged to do so by the Union, because it would have been "extremely difficult and time-consuming" to fix the problem.[20] None of these reasons

[19] Ex, 6, Cawley Memo.
[20] Ex. 8, McDonough Tr./28.

present a good-faith basis for violating the FLSA, and therefore, liquidated damages must be awarded. *Parolin, supra.*

**CONCLUSION**

For the foregoing reasons, the Court should allow the Plaintiffs' Motion for Partial Summary Judgment as to Liability on Count I of their Complaint, and determine, as a matter of law, that the Defendant's violation of the law with respect to Count I was willful within the meaning of the FLSA, and was not in good faith, entitling the Plaintiffs to a limitations period of a minimum of three years for an assessment of back pay due the Plaintiffs, and for liquidated damages, pursuant to 29 U.S.C. § 216(b).

Respectfully submitted,

THE PLAINTIFFS,

By their attorney,

s/Daniel W. Rice
Daniel W. Rice, BBO # 559269
GLYNN, LANDRY,
HARRINGTON & RICE, LLP
10 Forbes Road
Braintree, MA 02184
(781) 849-8479
danielrice@comcast.net

Dated: November 15, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 15, 2007.

/s/ Daniel W. Rice
Daniel W. Rice